UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY OUNKHAM,<br><br>             Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | Case No. 1:20-cv-01371-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 15). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for disability benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 21).

Plaintiff presents the following issues for decision: "1) Whether The ALJ Failed to provide any evidence to support the Residual Function Capacity [(RFC)]; 2) Whether These Failures Were Harmful; and 3) Whether this case should be remanded for payment of benefits or further proceedings." (ECF No. 15, p. 7).

1

Having reviewed the record, administrative transcript, the briefs of the parties,[1] and the applicable law, the Court finds as follows:

**I. ANALYSIS**

Plaintiff argues that the ALJ's RFC assessment regarding Plaintiff's mental impairments[2] is unsupported by substantial evidence because the ALJ failed to accept any of the medical opinions in the record on this issue and instead relied on the ALJ's own interpretation of the medical evidence. (ECF No. 15, pp. 7-12). And without any medical opinion to rely on, Plaintiff argues that the ALJ subsequently failed to develop the record regarding Plaintiff's mental impairments by obtaining a consultative exam. (*Id.* at 12).

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating the RFC, the ALJ weighs medical and other source opinions and the record as a whole. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *Smith v. Saul*, No. 1:18-CV-01614-GSA, 2020 WL 2611680, at *5 (E.D. Cal. May 22, 2020) (rejecting "the residual functional capacity determination for lack of compliance with applicable law and insufficient support from the record as a whole").

In reviewing findings of fact with respect to such determinations, this Court determines whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389,

---

[1] Plaintiff filed an opening brief on December 1, 2021, and the Commissioner responded on January 24, 2022. (ECF Nos. 15, 18). Plaintiff did not file a reply.

[2] Plaintiff does not challenge the ALJ's RFC assessment regarding Plaintiff's physical impairments.

402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Lastly, an ALJ has a duty to develop the record "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

Here, the ALJ gave the following reasons in support of Plaintiff's RFC assessment:

> I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can lift and carry 50 pounds occasionally and 25 pounds frequently; stand, walk, and sit six hours each in an eight-hour workday; frequently climb ramps and stairs, stoop, and kneel; and occasionally climb ladders and scaffolds, crouch, and crawl. Mentally, the claimant can perform simple routine tasks and perform routine work-related decisions making. He can tolerate occasional contact with supervisors and coworkers, but no contact with the general public. He cannot work at a production rate pace and he needs a 10-minute break every two hours.
>
> . . . .
>
> The treatment record indicates a history of trauma and abuse with mental symptoms including flashbacks, hallucinations, nightmares, depression, and anxiety (Exhibits D1F, pp. 4, 20, 25, 29, 45). However, the claimant's mental symptoms have improved with medication (Exhibit D1F, pp. 4, 6, 34, 38). In May 2014, a provider opined a GAF of 50; however, his provider was still working on the right medication regiment at that time (Exhibit D1F, pp. 61). By June 2015, he reported feeling better with fluoxetine and having no nightmares on Abilify (Exhibit D1F, p. 4). He was cooperative, alert, had normal speech, organized thoughts, and was of average intelligence, but had impaired insight and judgement (Exhibits D1F, pp. 4, 6, 8, 10, 12, 14, 16, 18). In 2015, the claimant was coping with his mental symptoms by attending church and he was on a waiting list for government housing (Exhibit D5F, pp. 14, 20). He reported situational stressors in his life at this time (Exhibit D5F, pp. 12, 13, 14, 17, 20). He had not had any more nightmares and he was doing well overall in January 2016 (Exhibit D5F, pp. 5, 6). In April 2016, the claimant told his providers that he had been hearing voices since adolescents and he was hearing voices when he was depressed (Exhibit D8F, p. 26). He requested an increase in Prozac, and his provider prescribed Benadryl (Exhibit D8F, p. 29). The following month, he reported improved motivation and depression, less auditory hallucinations, and only rare psychosis (Exhibit D8F, p. 23). He reported a period of increased symptom[s] when his young daughter was out of the country, but he was feeling better in April 2017 and he was doing well in June 2017 (Exhibit D8F, pp. 8, 10). In October 2017, the claimant was doing very well and was stable on his medications (Exhibit D8F, p. 2). The undersigned notes that throughout 2017 and 2016, the claimant was typically noted to be well groomed, cooperative, alert, with normal cognition and speech, had organized

thoughts, and had normal mood, insight, and judgment (Exhibits D8F, pp. 1, 6, 8, 10, 12, 14, 18, 20, 22, 29). He has continued to do well in 2018 and 2019 with regard to his mental symptoms (Exhibit D14F, pp. 4, 7, 10, 12, 10, 22, 26). He reported that his medication was working well (Exhibit D14F, p. 8).

. . . .

Christine M. Sanchez, LMFT completed a verification of incapacity for eligibility for general relief (Exhibit D6F, pp. 1-2). She indicated that the claimant was permanently unable to work with an onset date in 2014 due to PTSD, depression, and psychosis (Exhibit D6F, p. 1). This opinion is given little to no weight. The treatment record indicates the claimant's mental symptoms are stable with treatment, and his opinion invades on an opinion reserved to the Commissioner of the Social Security Administration. Further, it is not helpful in determining the claimant's specific functional ability.

Nurse Practitioner Theresa Vincent, NP completed a mental disorder questionnaire dated September 2017 (Exhibit D7F, pp. 1-2). It was unknown whether the claimant needed assistance to keep appointments (Exhibit D7E, p. 1). She noted the claimant was from a war torn country and had a very traumatic past with a significant history of flashbacks, nightmares, depression, anxiety, and psychosis (Exhibit D7F, p. 1). She also indicated that hallucinations and mood swings would impair the claimant's ability to perform full time work (Exhibit D7F, p. 1). She had first examined the claimant in February 2016 seeing him every eight weeks (Exhibit D7F, p. 2). This opinion is given limited weight. As discussed above, the claimant has done fairly well with treatment. I also note that the claimant was able to work for many years after leaving his war torn country of origin. I find that the overall record does support limits on complex work and contact with others, as well as production pace work; but it does not appear to cause an overall preclusion on full time work. I also note that it does not appear that providers have actually witnessed hallucinations.

. . . .

State agency psychological consultants A. Garcia, MD and Jenaan Khaleeli, PsyD concluded the claimant's affective and anxiety disorders caused a mild limitation in activities of daily living, social functioning and concentration, persistence, and pace; and were not severe (Exhibits D3A, p. 9; D8A, p. 9). I give these opinions limited weight. Although the claimant appears to be fairly stable with treatment, his overall symptoms appear to cause some restriction on his ability to perform complex tasks and interact with others.

. . . .

The claimant's therapist Pukan Phaoudom completed a third party function report dated June 2015 (Exhibit D7E). She indicated that the claimant struggled with concentration, was not able to follow instructions, was forgetful, crying and tearful at times, and he was fearful of people due to past trauma (Exhibit D7E, p. 1). He had problems with sleep, nightmares, suicidal thoughts, flashbacks, and constant pain (Exhibit D7E, p. 1). However, she noted the claimant was good at keeping appointments, but isolated in his room and had reminders from his mother for daily activities (Exhibit D7E, p. 2). He could prepare simple meals, but could not

4

>do any house chores (Exhibit D7E, p. 3). He walked or drove for travel, shopped in store, and was able to handle his finances (Exhibit D7E, p. 4). He attended church, but did not spend time with others (Exhibit D7E, p. 5). He could walk one block or less before needing 15-20 minutes rest, was limited in his ability to follow written instructions, and he was slow and had difficulty understanding spoken instructions (Exhibit D7E, p. 6). He was respectful and fearful with authority figures, and he did not handle stress or changes well (Exhibit D7E, p. 7). This report was considered and given some weight with regard to the claimant's daily activities; however, I note that the treatment record indicates increased activities and decreased mental and physical symptoms that are not fully consistent with this report.

(A.R. 19, 22-24).

While Plaintiff correctly argues that it is error for an ALJ to define limitations for a Plaintiff absent supporting evidence, such was not the case here. (*See* ECF No. 15, p. 11). As reflected above, the ALJ summarized Plaintiff's mental health records, which included notations about both his symptoms and abilities, concluding that the overall record indicated that Plaintiff was improving to the point of not having disabling impairments.

Likewise, the Court rejects Plaintiff's contention that "[t]he ALJ did not accept *any* of the medical opinions in the record" regarding Plaintiff's mental RFC assessment. (ECF No. 15, p. 9) (emphasis in original). True, the ALJ discounted all the opinions to a degree, but this is different than not accepting the opinions at all. Notably, the only opinion that the ALJ can be said to have rejected is that of LMFT Sanchez, who opined that Plaintiff was permanently disabled, with the ALJ giving "little to no weight" to the opinion because, among other things, it assessed Plaintiff as being disabled, which is an issue reserved for the ALJ. (A.R. 23, 940); *see McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (noting than "[a]n impairment is a purely medical condition" but "[a] disability is an administrative determination"). However, as to the remaining opinions, the ALJ gave them at least "limited weight."

As to Nurse Practitioner Vincent, the ALJ gave "limited weight" to the mental disorder questionnaire, which opined, among other things, about the effect that hallucinations and mood swings would have on Plaintiff's ability to perform full time work. (A.R. 23, 942). The ALJ reasoned that "the overall record [did] support limits on complex work and contact with others, as well as production pace work" but Plaintiff's medical records indicated that he had done well

5

enough with treatment so as not "to cause an overall preclusion of full time work." (A.R. 23). The ALJ was well within bounds to accept the opinion in part and reject it in part. *See Johnson v. Saul*, No. 1:19-CV-01584-SKO, 2021 WL 84377, at *6 (E.D. Cal. Jan. 11, 2021) ("[A]n ALJ's RFC determination need not precisely reflect any particular medical provider's assessment.").

Likewise, the ALJ assigned "limited weight" to the opinions of State agency psychological consultants Garcia and Khaleeli who concluded that Plaintiff's mental disorders caused mild limitations and were not severe. (A.R. 24, 251, 294). The ALJ reasoned that Plaintiff had been "fairly stable with treatment," which both Garcia and Khaleeli had observed, but concluded that Plaintiff's "overall symptoms" warranted "some restriction on his ability to perform complex tasks and interact with others." (A.R. 24, 251, 294).

Lastly, the ALJ found that the third-party function report of Plaintiff's therapist, Phaoudom, was entitled to "some weight." (A.R. 24). Among other things, Phaodom's report indicated that Plaintiff was fearful of people because of past trauma and, as to authority figures, was "very respectful" of them but also "fearful of them at the same time." (A.R. 553, 559). This reasonably support the ALJ's conclusion that Plaintiff had could not interact with the public but could "tolerate occasional contact with supervisors and coworkers." (A.R. 19). However, the ALJ also reasonably declined to assign more weight to the report, concluding that "the treatment record indicates increased activities and decreased mental and physical symptoms that are not fully consistent with this report."[3]

Based on the ALJ's assessment of the above opinions in light of the record as a whole, the Court concludes that the RFC assessment of Plaintiff's mental limitations was supported by such evidence that a reasonable mind might accept as adequate to support a conclusion and rejects Plaintiff's argument that the ALJ improperly crafted the RFC based on the ALJ's own interpretations of the record. *See Digiacomo v. Saul*, No. 1:19-CV-00494-BAM, 2020 WL 6318207, at *8 (E.D. Cal. Oct. 28, 2020) (affirming RFC assessment based on all record evidence and where "ALJ did not substitute her judgment for a competent medical opinion, play doctor, or

---

[3] Phaoudom's report was also based on Plaintiff's physical impairments. As noted above, Plaintiff has not challenged the ALJ's RFC assessment of Plaintiff's physical impairments.

make independent medical findings"). Because the ALJ did not err regarding the RFC assessment and the record was not ambiguous, there was no duty for the ALJ to further develop the record. *See Harrison v. Saul*, No. 1:19-CV-01683-BAM, 2021 WL 1173024, at *5 (E.D. Cal. Mar. 29, 2021) ("Because it is the Plaintiff's burden to present evidence of disability, the mere absence of an opinion from an examining physician does not give rise to a duty to develop the record; rather, that duty is triggered only where there is an inadequacy or ambiguity.").

## II. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security, and against Plaintiff Larry Ounkham.

IT IS SO ORDERED.

Dated: **March 9, 2022**   /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE